UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRADY CENTER TO PREVENT
GUN VIOLENCE,

*Plaintiff*,

v.

UNITED STATES DEPARTMENT
OF STATE,

*Defendant*.

Civil Action No. 18-3007 (JEB)

## JOINT STATUS REPORT

Defendant, the United States Department of State ("State"), and Plaintiff, the

Brady Center to Prevent Gun Violence (the "Brady Center"), each by its undersigned

counsel, submit their respective positions in this joint status report pursuant to the

Court's minute order dated November 15, 2019, to apprise the Court of the status of

State's response to the Brady Center's Freedom of Information Act Request F-2018-

05229 (the "Request") at issue in this litigation.

To date, State has identified 1,308 documents responsive to the Request.  Of

these, State has withheld 973 documents in full,[1] withheld 230 documents in part,

and released 105 documents in full.  In a letter to the Brady Center dated February

---

[1] State identified a discrepancy in the number of documents it reported in its release determination letters as having been withheld in full.  The numbers of documents accounted for it in this status report accurately reflect the number of documents processed in this case.

14, 2020, transmitting the agency's latest production, State advised the Brady Center

that the agency has completed the processing of the Request.[2]

## I.    THE BRADY CENTER'S POSITION

This litigation is ripe for the Court to set a summary judgment briefing

schedule.  In light of State's overwhelming number of withholdings, State has not—

nor cannot—meet its burden to justify its nondisclosure of documents responsive to

the Brady Center's Request with "reasonably specific detail, [to] demonstrate that

the information withheld logically falls within the claimed exemption, and are not

controverted by either contrary evidence in the record nor by evidence of agency bad

faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller*

*v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).

In withholding in full or in part over 90 percent of documents responsive to

the Request, the agency has provided only conclusory or generalized statements as

to the exemptions that it claims apply.  State also has not provided a *Vaughn* index

to the Brady Center.  Its suggestion that it may be willing to provide a limited index

with respect to certain withholdings is insufficient.  The sheer magnitude of State's

withholdings and the lack of specific detail State has provided to date regarding

---

[2] On February 21, 2020, State informed Plaintiff that, due to an administrative
oversight, it had not accounted in any prior release letter for 15 documents that had
been withheld in full.  These documents had been fully processed prior to February
14, 2020.

applicable FOIA exemptions make it impossible for State to fully justify the exemptions claimed.[3]

State made a total of 11 document productions to the Brady Center over the course of processing the Request.  Each of the letters transmitting these productions offered only general and conclusory statements as to which FOIA exemptions applied to the documents withheld in full.  State gave no further description of these withheld documents, did not list the type of each document or give a general summary of each document's subject-matter or content.  State also did not detail the specific FOIA exemption(s) applicable to each document withheld.

With respect to documents released in part, redactions were labeled with the claimed FOIA exemption subsection(s), but with no other additional detail or description.  The lack of detail makes it impossible to evaluate the basis for State's redactions.  For example, for redactions made pursuant to Exemption 5, State did not identify the type of privilege asserted (*e.g.* deliberative, attorney work-product, or attorney-client), and certain redactions made pursuant to Exemption 6 appeared to contain substantive content not limited solely to personal privacy information.  Indeed, in many cases State simply listed any FOIA exemption that might apply to

---

[3] While State has made a conclusory statement that it has completed processing the Request, it has not described the extent of its searches and, as such, the adequacy of the agency's searches has not been tested.

some portion of a document which was extensively or fully redacted making it impossible for the Brady Center to determine which FOIA exemption State was claiming for particular portions of a document

The Brady Center filed the Request more than 19 months ago, seeking copies of records relating to the settlement between State and Defense Distributed, permitting Defense Distributed to publish computer-aided design ("CAD") files that act as blueprints for the creation of guns and gun components for three-dimensional ("3D") printers without government approval.  Shortly thereafter, the Request was granted "expedited processing" status, on the grounds, *inter alia*, that the documents requested were necessary to ensuring the physical safety of individuals residing in the United States and abroad.  On January 23, 2020, changes to the federal rules were published that would shift export oversight and licensing for small arms that are not considered military equipment from the U.S. Department of State to the U.S. Department of Commerce.  The proposed rules changes, which are set to take effect 45 days from the date of publication, will allow for the online publication of the very same CAD files that were the subject of the litigation and resulting settlement between State and Defense Distributed.  Should the rules take effect, they will

undoubtedly jeopardize the physical safety of individuals residing in the United States and abroad.[4]

There is no more time for delay.  State has not complied with its statutory obligations to either produce records responsive to the request or adequately justify the exemptions it claims.  For the reasons described above, the Brady Center respectfully requests the following briefing schedule:

- State's Motion for Summary Judgment: March 30, 2020

- The Brady Center's Opposition and Cross-Motion for Summary Judgment: April 13, 2020

- State's Reply in Support of Motion for Summary Judgment and Opposition: April 20, 2020

- The Brady Center's Reply in Support of Cross-Motion for Summary Judgment: April 27, 2020

## II.    THE STATE DEPARTMENT'S POSITION

State is surprised by Plaintiff's position. Throughout this case, State has met or exceeded the processing rate ordered by the Court on May 13, 2019, and provided

---

[4] *See* Stacy Fernández, "Trump Administration Sets Into Motion Return of Online 3D Gun Blueprints", Texas Tribune (Jan. 14, 2020), available at https://www.texastribune.org/2020/01/14/3d-printed-gun-blueprints-could-soon-go-back-online/; Daniel Wilson, "States to Sue Trump Admin. Over 3D-Printed Gun Rules", Law360 (Jan. 21, 2020), available at https://www.law360.com/articles/1236233/states-to-sue-trump-admin-over-3d-printed-gun-rules.

its final release to the Brady Center on February 14, 2020. That same day, undersigned counsel for State inquired with the Brady Center's counsel as to how the Center would like to proceed. Brady Center's counsel asked only whether State would be providing a *Vaughn* index, and State indicated that it is generally willing to do so for the purpose of eliminating or limiting disputes to be briefed on summary judgment and requested that the Brady Center identify the specific withholdings in dispute, as it would take an massive amount of time and effort to index every withholding and redaction (some of which overlay other redactions) in the approximately 1,200 documents (not pages) withheld in full or in part. Brady Center's counsel stated that State need not index names, telephone numbers, and email addresses, but that it would not limit its dispute any further. That was on February 18, 2020. Since then, State has been analyzing its withholdings to determine how long it would take to create a draft *Vaughn* index to the Brady Center's specifications and whether there might be some way to make the process less time-consuming and more efficient through the categorization of certain records on the index or some other means. It will, however, take State some more time to make that determination.

Then, at about 5:04 p.m. today—the day this status report is due and without prior warning—the Brady Center's counsel provided undersigned counsel for State with a draft of this report setting forth the Brady Center's position above. At no point

prior to that time has the Brady Center's counsel indicated the odd position that the amount of State's withholdings inherently demonstrates States inability to adequately justify them—a non sequitur—or that efforts to resolve or narrow the Brady Center's disputes through exchange of a draft index would be futile, or that the parties should proceed immediately to summary judgment. Nor has the Brady Center prior to this evening raised any dispute about the adequacy of State's search. State would have been happy to confer with the Brady Center on that subject.

State is disappointed in the Brady Center's last-minute abandonment of what State perceived to be good-faith discussions and its sudden insistence (without any effort to confer) that State's search and a very large amount of withholdings be briefed to the Court in a summary judgment motion. State remains willing to engage in discussions about how to narrow the issues that need to be litigated, and to explore how it can provide Plaintiff with additional information about its withholding. State understands that it cannot, however, force the Brady Center to negotiate, and will move forward preparing a comprehensive motion for summary judgment if necessary. Given the large amount of contested withholdings, however, it will take State far longer than the schedule proposed by the Brady Center to file an opening motion. As noted, State is currently assessing how long it would take to create an index addressing all of the Brady Center's challenged withholdings and whether it can take some approach that would make the process less time consuming and more

efficient (and less burdensome for the Court in deciding the motion).  State therefore

requests that the Court defer the entry of a briefing schedule at this time and instead

order the parties to submit a briefing schedule in two weeks, on or before March 5,

2020.

Respectfully submitted,

/s/ Ariel S. Glasner                         
Ariel S. Glasner, D.C. Bar #991442
Jon Waldron, D.C. Bar #425539
Blank Rome LLP
1825 Eye Street, N.W.
Washington, District of Columbia
20006
Telephone: 202 772 5963
AGlasner@Blankrome.com


Jonathan E. Lowy, D.C. Bar #418654
Joshua Scharff, D.C. Bar #999392
Brady Center to Prevent Gun Violence
840 First Street, N.E., Suite 400
Washington, District of Columbia
20002
Telephone: 202 370 8105
jscharff@bradymail.org

*Counsel for Plaintiff*

Dated: February 20, 2020

TIMOTHY J. SHEA, D.C. Bar
#437437
United States Attorney

DANIEL F. VAN HORN, D.C. Bar
#924092
Chief, Civil Division

By: /s/ Johnny Walker                        
JOHNNY H. WALKER, D.C. Bar #
991325
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia
20530
Telephone: 202 252 2575
johnny.walker@usdoj.gov

*Counsel for Defendants*