UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRADY CENTER TO PREVENT GUN VIOLENCE,<br><br>   *Plaintiff*,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF STATE,<br><br>   *Defendant*. | Civil Action No. 18-3007 (JEB) |

# **JOINT STATUS REPORT**

Plaintiff, the Brady Center to Prevent Gun Violence ("Brady"), and Defendant, the United States Department of State ("State"), each by its undersigned counsel, submit their respective positions in this joint status report pursuant to the Court's minute order dated September 1, 2020, to apprise the Court of the status of State's response to Brady's Freedom of Information Act Request F-2018-05229 (the "Request") at issue in this litigation.

On May 15, 2020, the Court vacated the briefing schedule to which the parties had already agreed after State discovered a "sizeable" collection of records that had been submitted to the agency's FOIA office as possibly responsive but that had not yet been processed for release. Despite this delay, the parties attempted to confer over the summer. In August 2020, Brady requested the scheduling of a status conference specifically to address the parties' disagreement

as to State's projected timeline for processing the remaining documents considering applicable COVID-19 restrictions. Immediately following the status conference on September 1, 2020, the Court ordered State to begin "processing forthwith" a new batch of "recovered emails (with attachments) on their unclassified platform."

## I. BRADY'S POSITION

Brady respectfully requests that the Court order State to complete its processing of all outstanding responsive documents by November 15, 2020. At the September 1 status conference, State misrepresented the number of documents remaining to be processed. State has since failed to produce the remaining documents "forthwith" as the Court ordered (at the status conference the Court expressed its "hope [that] on October 1st [State will have] processed a number of these, 600" records; to date, State has produced nothing) or to confirm for Brady the number of documents remaining. As such, it is clear that until the Court orders State to produce documents by a date certain, the agency will not complete its response to the FOIA request so that the parties may proceed to summary judgment briefing.

At the September 1, 2020 status conference, State represented to the Court that the remaining documents consist of "about 600 e-mails with some untold

number of attachments that remain to be processed."[1]  But immediately following the status conference, counsel for State informed Brady that there likely were additional documents remaining beyond what it had disclosed to the Court.  Per counsel for State's email to counsel for Brady, received at 10:27 am on September 1, mere minutes after the conclusion of the status conference and the Court's issuance of a minute order:

> In the interest of avoiding any more surprises, I wanted to make you aware that there is at least some possibility that there are responsive records in addition to the approximately 600 emails (with unnumbered attachments) that I mentioned during the conference call. Specifically, there may be some withheld classified records, but we have not confirmed that to date, due to the remote inaccessibility of State's classified files. We are working to get confirmation.

State has yet to provide any such confirmation, despite follow up e-mails from Brady on September 8 and September 16.

The only reason Brady's request has remained outstanding for more than two years is because of State's delays.  To the extent the coronavirus pandemic has impacted State's FOIA operations, it does not excuse the agency's misrepresentations to Brady and the Court regarding the number of documents remaining.  Nor does it excuse the agency's extraordinary delay in processing this

---

[1] State further outlined a process for reviewing the remaining documents, to which counsel for Brady agreed while noting that Brady's FOIA request is more than two years old and document production was scheduled to be completed in February 2020.

request, particularly given the compelling need for these documents and State's acknowledgment at the last status conference that it has the ability to process the request, albeit under a different review process. [2]

It appears that State will not comply with its obligations to process the documents responsive to Brady's FOIA request without Court intervention. For the foregoing reasons, Brady respectfully requests that the Court order State to complete its processing of all outstanding responsive documents by November 15, 2020.[3]

---

[2] Guidance issued by the Department of Justice's Office of Information Policy, which is responsible for promoting government-wide compliance with FOIA, has instructed federal agencies as follows:

> During these times, even as agencies are working under new constraints in light of COVID-19, agencies' legal obligations under the FOIA continue. The law remains an important tool for the public to gain access to government information to stay informed about government activities. *Accordingly, as a general matter, to the extent feasible agencies should work to ensure that their FOIA operations continue in compliance with the FOIA's requirements*.

U.S. Department of Justice Guidance for Agency FOIA Administration in Light of COVID-19 Impacts (Updated May 28, 2020), available at https://www.justice.gov/oip/guidance-agency-foia-administration-light-covid-19-impacts (emphasis added). Moreover, a Washington Post article dated October 1, 2020, reported that 86 percent of FOIA requests deemed "complex" took less than 400 days to process and the average time to process a "simple" request was "more than 39 days." *See* Nate Jones, "Public Records Fall Victim to the Coronavirus Pandemic," dated Oct. 1, 2020, available at https://www.washingtonpost.com/investigations/public-records-requests-fall-victim-to-the-coronavirus-pandemic/2020/10/01/cba2500c-b7a5-11ea-a8da-693df3d7674a_story.html. The same article cited to an example of a FOIA request submitted on April 3, 2020, that State was able to process within 14 weeks. *See id.* Brady's FOIA request—which has been granted expedited processing—has now been outstanding for more than 800 days.

[3] At the September 1st Status Conference, the Court noted that it would be "happy to set another status" if there was "still some disagreement" regarding Defendant's timeline in producing the "600 e-mails…that remain to be processed." Undersigned counsel for Brady believes the record here is sufficiently clear for the court to make a decision on a path forward. However, to the

## II. THE STATE DEPARTMENT'S POSITION

Since the September 1, 2020 status conference, State has worked to implement the Court's order. State has ingested potentially responsive documents from the set of 600 previously identified files into FOIAXpress, its review system that has an unclassified component and is therefore remotely accessible. State is currently reviewing potentially responsive documents and anticipates making its first production of responsive, non-exempt documents on October 28, 2020. State is prepared to continue rolling productions every 6 weeks thereafter. Although State is not in a position to commit to its pre-pandemic standard processing rate of 300 pages of potentially responsive documents per month (or 450 pages per 6 weeks), State will make its best efforts to process this case at an average rate of 450 pages of potentially responsive documents every 6 weeks.

State shares Plaintiff's interest in moving to summary judgment briefing as quickly as practicable but is simply unable to meet Plaintiff's requested processing timeline due to the work required to process documents, its current FOIA burden, and the persistent effects of the pandemic on its FOIA processing capabilities.

---

extent the Court wishes to schedule another status conference, Brady is of course willing and available to attend.

State is currently involved in over 190 FOIA/Privacy Act lawsuits and has finite resources to process FOIA requests both in and out of litigation. These resources are even more limited than usual because of the current pandemic. At the outset of the pandemic, State estimated there was a 96% reduction in its ability to process FOIA requests due to the unavailability of personnel.

Since that time, State has devoted substantial resources to adapting its FOIA program due in large part to the significant and unprecedented constraints imposed by COVID-19. These efforts have enabled remote FOIA processing in cases located in FOIAXpress and have also allowed a limited number of personnel to return to the office and resume work in the Department's legacy review system (FREEDOMS2), which is exclusively available on a classified network that cannot be accessed remotely.

Despite these efforts, State's FOIA processing capabilities remain diminished. Approximately 20% of FOIA personnel have returned to the Department on at least a regular, part-time basis. The analyst managing this case is not among this group. Resources for remote work are also constrained due to factors such as novel technological issues and the fact that not all reviewers have resumed work because they cannot be compelled to telework. Beyond the State FOIA office's own constraints, the FOIA office is also still contending with the

constraints of other Department and Executive Branch components. Many documents that the FOIA office processes in FOIA are documents in which other Department and/or Executive Branch components have equities. Accordingly, the review process for these documents necessitates consultations with other Department and/or Executive Branch components. At this time, the constraints on the Department and on other Executive Branch entities will likely continue to create difficulties in obtaining these necessary clearances from other Department or Executive Branch components. Because the FOIA office does not release documents in FOIA until it receives clearances from the internal Department components and external Executive Branch components that have equities in the information in those documents, the FOIA office's processing capacity will remain diminished.

For the aforementioned reasons, State is not in a position to commit to process on a schedule other than what it has proposed.

As explained to Plaintiff, it is possible that there are additional potentially responsive records on State's classified system that require review. The person responsible for collecting search results for this case, who has the ability to verify whether or not such additional potentially responsive records exist on the classified system, is the analyst. Because the analyst is teleworking without access to

FREEDOMS2, the Department has not been able to confirm whether or not such records exist, but will do so as soon as practicable.[4]

In the interest of moving this case forward and narrowing the issues remaining in dispute, State intends to provide Plaintiff with a draft search declaration and an updated *Vaughn* index on the date of this filing.

The FOIA office will continue to follow Executive Branch and/or Department guidance issued in response to the ongoing public health situation, and will continue to provide updates about its current and anticipated future FOIA processing capacity. State proposes that the Court order the parties to file a joint status report on December 1, 2020 in which it will provide an update on its operations and the processing of Plaintiff's request.

---

[4] Brady Center unfairly accuses undersigned counsel for the Department of "misrepresenting" the total number of outstanding records to the Court during the status conference. To the contrary, undersigned counsel candidly provided the Court with the estimated number of *all* of the additional records of which State's FOIA office is aware. Given the history of this case, however, and to avoid any possibility whatsoever of future surprises, undersigned counsel emailed counsel for Brady Center after the conference to note that there was at least some possibility that there could be some records on classified networks to which the Department did not then have access. Contrary to Brady Center's representation and as reflected in the communication that the Brady Center excerpts in its statement, undersigned counsel did not represent that there are "likely" any such classified records. Undersigned counsel's communication was sent only in an abundance of caution and to avoid any possibility of surprise. Brady Center's counsel did not raise any concerns about that communication until today when it provided the Department with its draft position in this status report.

Case 1:18-cv-03007-JEB   Document 23   Filed 10/01/20   Page 9 of 9

Respectfully submitted,

| | |
|---|---|
| By:  /s/ Stefanos N. Roulakis<br>Stefanos N. Roulakis, D.C. Bar # 1016931<br>Ariel S. Glasner, D.C. Bar #991442<br>Jon Waldron, D.C. Bar #425539<br>Blank Rome LLP<br>1825 I Street, N.W.<br>Washington, District of Columbia 20006<br>Telephone: 202 772 5958<br>SRoulakis@Blankrome.com<br><br>Jonathan E. Lowy, D.C. Bar #418654<br>Joshua Scharff, D.C. Bar #999392<br>Brady Center to Prevent Gun Violence<br>840 First Street, N.E., Suite 400<br>Washington, District of Columbia 20002<br>Telephone: 202 370 8105<br>jscharff@bradymail.org<br><br>*Counsel for Plaintiff*<br><br>Dated: October 1, 2020 | MICHAEL R. SHERWIN<br>Acting United States Attorney<br><br>DANIEL F. VAN HORN, D.C. Bar #924092<br>Chief, Civil Division<br><br>By:    /s/ Johnny Walker<br>JOHNNY H. WALKER, D.C. Bar # 991325<br>Assistant United States Attorney<br>555 4th Street, N.W.<br>Washington, District of Columbia 20530<br>Telephone: 202 252 2575<br>johnny.walker@usdoj.gov<br><br>*Counsel for Defendants* |